## EQUITABLE LIEN FOR ATTORNEYS' FEES.

### Common Pleas Court of Licking County.

JAMES H. SMITH ET AL V. THE BALTIMORE & OHIO RAILROAD
COMPANY ET AL.[*]

Decided, 1909.

*Attorney and Client—Lien of Attorney for Services Rendered—Under
an Agreement for a Certain Proportion of the Amount Recovered
—Pleading.*

1. An agreement between attorney and client, such as is set out in the
petition in this case, operates as an equitable assignment to the
attorney of the agreed portion of the judgment thereafter ob-
tained as compensation for services rendered in that behalf, and
gives to the attorney an equitable lien on the proceeds from the
settlement of said matter.

2. In pleading such a contract between attorney and client, it is not
necessary to allege whether or not the contract was in writing, or
if in writing to attach a copy thereof to the petition, but only to
allege the substance of the contract.

*Smythe & Smythe* and *Carl Norpell* for plaintiffs.
*Kibler & Kibler* and *Fulton & Fulton,* contra.

WICKHAM, J.

The amended and supplemental petition in this case recites the
following facts:

"The said plaintiffs in this amended and supplemental peti-
tion say, for cause of action, that on or about the 22d day of
December, A. D. 1881, the said plaintiffs, James H. Smith, by
his attorneys, the plaintiffs, George B. Smythe and Jerome Buck-
ingham, began a civil action in said court on behalf of himself
and others, as creditors of the Newark, Somerset & Straitsville
Railroad Company, then an insolvent corporation, organized
under the laws of Ohio, against said insolvent company and the
Railroad Company, then an insolvent corporation, organized
holders of the said insolvent company, to establish the validity
of certain promissory notes made by said insolvent company and

---

[*] Affirmed by the circuit court without opinion,

owned by said Smith, and to enforce the ratable statutory liability of the stockholders for the payment thereof.

"That at a term of said court of September, 1892, in said action the said James H. Smith recovered a judgment against the said The Baltimore & Ohio Railroad Company, as such a stockholder, upon the claim aforesaid, for the sum of one hundred and fifty-three thousand, five hundred and forty-six dollars and fifty-nine cents; that thereupon said last named company gave notice of its intention to appeal from said judgment to the circuit court of said county, which notice was at the same time duly entered upon the journal of said first named court; that afterwards, on the 18th day of November, A. D. 1892, and within thirty days from the rising of said first named court at said term, the said, the Baltimore & Ohio Railroad Company, and the defendants, Orland Smith, James H. Collins, John C. Larwill, David Lee, Charles H. Kibler and James Herdman as its sureties, in order to perfect the said appeal, gave to said James H. Smith an undertaking signed and sealed by them, of which the following is a copy, to-wit:

"'Know All Men By These Presents, That the Baltimore & Ohio Railroad Company and Orland Smith, John C. Larwill, David Lee, Charles H. Kibler, J. H. Collins, James Herdman are held and firmly bound unto James H. Smith in the penal sum of three hundred and seven thousand and ninety-three and 18-100 dollars, to the payment of which well and truly to be made, the said Baltimore & Ohio Railroad Company and the above other obligors do hereby jointly and severally bind itself and ourselves, our heirs, successors, executors and administrators. Signed by the Baltimore & Ohio Railroad Company, by Thomas M. King, its vice-president, and attested by its corporate seal and signed by us and dated this seventh day of November, A. D. 1892.

"'The condition of the above obligation is such that, whereas the said the Baltimore & Ohio Railroad Company has taken an appeal from a certain decree or judgment rendered against it in the above entitled action (which title is, James H. Smith v. the Newark, Somerset & Straitsville Railroad Company, and others, defendants, in the court of common pleas) in favor of the said James H. Smith, in the court of common pleas within and for the county of Licking, in the state of Ohio, at the September term, A. D. 1892,–for the sum of one hundred and fifty-three thousand five hundred and forty-six 59-100 dollars, to the circuit court within and for the county aforesaid. Now, if the said, the Baltimore & Ohio Railroad Company shall abide and perform the order and judgment of said circuit court, and shall

pay all moneys, costs and damages which may be required of, or awarded against it by said circuit court, then this obligation to be void, otherwise to remain in full force and virtue in law [a copy of which undertaking is hereto attached].'

"That the said undertaking was filed in said court of common pleas and it and the sureties thereon accepted by the clerk thereof on said eighteenth day of November, A. D. 1892.

"The plaintiffs herein further say, that on or shortly before the said 22d day of December, 1881, being the time when the said original action was begun, the said George B. Smythe and Buckingham were attorneys at law, practicing as such in the courts of Ohio, and it was then agreed by and between them and said James H. Smith that the said Symthe and Buckingham, as attorneys for said Smith, should begin an action for him, and such other creditors of said insolvent corporation as might participate therein in said court of common pleas, for the purposes hereinbefore stated (being the action also hereinbefore first mentioned), and prosecute the same, in that court and other courts to which it might be taken, to final judgment and collection, and that said Smythe and Buckingham should have, for compensation for their said services, three-tenths of the amount collected on said notes, one-half of it to belong to said Smythe and the other half to said Buckingham; and, for the purpose of carrying the said agreement into effect, the said Smith then delivered the said promissory notes to said Smythe and Buckingham, who ever since then have had possession thereof; that pursuant to said agreement the said action was begun and prosecuted as hereinbefore stated, the said Smythe and Buckingham conducting the same as the only attorneys for said Smith, except as to the aid of the said Jones as here stated, namely: that on or about the 18th day of June, 1891, it was agreed between the said Smith and Smythe, Buckingham and Jones, that said Jones should be employed to assist as an attorney for Smith in the further prosecution of said action, and should have for his compensation a reasonable sum to be paid one-half from the share of said Smythe and one-half from that of said Buckingham, and the said claims of said Smith, and the money so to be collected thereon, were then again pledged and assigned to said Smythe, Buckingham and Jones to secure to them said three-tenths as aforesaid, and by reason of said matters they became and ever since have been the owners of said claims and money to the extent of their said compensation, and in equity have an ownership and lien prior and superior to any claim, interest, lien or right of any of the said defendants herein.

"Plaintiffs further say that on or about the sixteenth day of July, 1896, it was agreed between said Smythe, Buckingham and Jones that the compensation of the said Jones should be three thousand dollars, one-half to be paid out of the share of Smythe, and one-half out of the share of said Buckingham, and at the same time said Smythe assigned to said Jones his interest and title in said three-tenths to the amount of fifteen hundred dollars."

The petition recites that certain assignments were made, and proceeds as follows:

"That said assignments made to said Shawnee Valley Coal & Iron Company, John C. Hamilton, Jay O. Moss, were so made to secure pre-existing debts, and were without any valuable consideration paid or received for them. The said Shawnee Valley Co. and the Franklin Bank Co. are corporations organized under the laws of Ohio, having their chief offices in said Licking county, and the Moss National Bank is a corporation under the laws of the United States, having its place of business in Erie county, Ohio.

"The plaintiffs further say that before and at the times the said several assignments were made, the assignees, and each of them, had notice of the said agreement so made between said Smith and his said attorneys, and of their claim, lien and interest thereunder, and that the said action and proceedings were then pending and undetermined. The plaintiffs say that the said Shawnee Valley Co., John C. Hamilton, Franklin Bank Co., Jay O. Moss, Moss National Bank of Sandusky, and First National Bank of Newark did not, nor did either of them, employ any attorney other than the attorneys for said Smith, to prosecute, or aid to prosecute said action, and, knowing that said Smith was insolvent, accepted and relied upon the services of said Smythe, Buckingham and Jones and had the benefit thereof, without which or other like services the said judgment would not have been obtained."

To this petition, the following motion is filed:

"1. Now come the defendants herein, the Moss National Bank of Sandusky, Ohio, James H. Collins, John C. Larwill, David Lee, Charles H. Kibler and James Herdman, and move the court to strike from the amended and supplemental petition filed herein March 22d, 1898, the words following, to-wit:

" 'The plaintiffs herein further say that on or shortly before the said 22d day of December, 1881, being the time when the

said original action was begun, the said George B. Smythe and
Buckingham were attorneys at law, practicing as such in the
courts of Ohio, and it was then agreed by and between them and
said James J. Smith that the said Smythe and Buckingham, as
attorneys for said Smith, should begin an action for him and
such other creditors of said insolvent corporation as might par-
ticipate therein in said court of common pleas, for the purposes
hereinbefore stated (being the action hereinbefore first men-
tioned), and prosecute the same in that court and other courts
to which it might be taken, to final judgment and collection,
and that said Smythe and Buckingham should have, for com-
pensation for their said services, three-tenths of the amount col-
lected on said notes, one-half of it to belong to said Smythe and
the other half to belong to said Buckingham; and, for the pur-
pose of carrying the said agreement into effect the said Smith
then delivered the said promissory notes to said Smythe and
Buckingham who ever since then have had possession thereof;
that pursuant to said agreement, the said action was begun and
prosecuted as hereinbefore stated, the said Smythe and Buck-
ingham conducting the same as the only attorneys for said
Smith.'

."For the reason that said averment is redundant, irrelevant
and immaterial.

"2. If the motion contained in the first point herein is over-
ruled, then the said defendants ask that the court require the
said plaintiffs to make said amended and supplemental petition
certain and definite by stating, first, whether said alleged con-
tract averred to have been made shortly before the 22d of Decem-
ber, 1881, was in writing, and if in writing, to state the contents
and substance of the same, or attach a copy thereof to the said
amended and supplemental petition.

"3. And the said defendants also move the court to strike
from the said amended and supplemental petition the words fol-
ling, to-wit:

" 'That on or about the 18th day of June, 1891, it was
agreed between the said Smith and Smythe, Buckingham and
Jones, that said Jones should be employed to assist as an attorney
for said Smith in the further prosecution of said action, and
should have for his compensation a reasonable sum to be paid,
one-half from the share of said Smythe and one-half from that
of said Buckingham, and the said claims of said Smith, and the
moneys so to be collected thereon, were then again pledged and
assigned to said Smythe, Buckingham and Jones, to secure to
them said three-tenths as aforesaid, and by reason of said mat-
ters they became and ever since have been the owners of said

claims and money to the extent of their said compensation, and in equity have an ownership and lien prior to and superior to any claim, interest, lien, or right of any of the said defendants herein.'

·''For the reason that the same is redundant, irrelevant and immaterial.

''4. ·If said motion is overruled, then the said defendants ask that the said plaintiffs be required to make said amended and supplemental petition certain and definite by stating whether the contract alleged to have been made on the 18th of June, 1891, between the said Smith, Smythe, Buckingham and Jones was in writing, and if in writing, to set forth the substance and contents thereof, or attach a copy thereof to the said amended and supplemental petition.

''5. And the said defendants ·also move the court to strike from the said amended and supplemental petition the words following, to-wit:

'' 'That the said assignments made to said Shawnee Valley Coal & Iron Company, John C. Hamilton, Jay O. Moss, were so made to secure pre-existing debts and were without any valuable consideration paid or received for them.'

''For the reason that the same is irrelevant, redundant and immaterial.

''6. And the said defendants ·also move the court to strike from the said amended and supplemental petition the words following, to-wit:

'' 'The plaintiffs further say that before and at the times the said several assignments were made, the assignees, and each of them, had notice of the said agreement so made between said Smith and his said attorneys and of their claim, lien and interest thereunder, and that the said action and proceedings were then pending and undetermined. The plaintiffs say that the said Shawnee Valley Co., John C. Hamilton, Franklin Bank Co., Jay O. Moss, Moss National Bank of Sandusky, and First National Bank of Newark, did not, nor did either of them, employ any attorney other than the attorneys for said Smith to prosecute or to aid to prosecute said action, and knowing that said Smith was insolvent, accepted and relied upon the services of said Smythe, Buckingham and Jones and had the benefit thereof, without which or other like services the said judgment would not ·have been obtained.'

''For the reason that the same is redundant, irrelevant and immaterial.''

Whether the first ground of the motion should be sustained depends upon whether an agreement between attorneys and

client, such as is set out in the petition, would operate as an equitable assignment of a portion of the judgment thereafter obtained.

I find no Ohio cases directly in point, but we have two New York cases that are authority in the affirmative, or rather, one case reported in different volumes. It is the case of *Fairbanks* v. *Sargent,* 104 N. Y. Reports, page 108. In that case there was an agreement between an attorney and his client substantially the same as in the case at bar, and it was held that the agreement between the attorney and his client constituted an equitable assignment, and gave the attorney on equitable lien upon the proceeds of the settlement of the case to the extent of one-third, that being the amount he agreed to accept as payment in full for his services. It was held further, that it was not necessary, in order to make such an assignment or lien valid, that notice should be given to the debtor. It was also held that, as between different assignees of a chose in action by express assignment from the same person, the one prior in point of time will be protected, although he has given no notice of such assignment to either the subsequent assignee or the debtor. And also: "where the owner of a chose in action, after a transfer for a good consideration of an interest therein to one person, assigns and transfers the same to a *bona fide* purchaser with authority to collect, the latter is not entitled to retain the whole proceeds of collection. The first transferee acquires an equitable lien upon the proceeds of collection to the extent of the interest transferred to him; the second transferee takes subject to such lien, and an action is maintainable against him to enforce the same."

In the opinion at the bottom of page 115, the court says:

"One assignee of such a claim from the owner must necessarily acquire the same interest in it that any other assignee does, and that is, in the absence of other controlling equities, an interest subject to the rule that he who is prior in point of time is prior in right. Such a claim is at common law non-assignable, and its assignee takes, by virtue of an assignment thereof, an equitable interest only, which must be governed by equitable rules for its protection and enforcement.

"It is undoubtedly the general rule that the assignee of a chose in action takes it subject to all the equities existing against it in

the hands of his assignor, and can acquire no greater right or interest therein than belonged to his tranferror.

"It was said by Judge Denio, in *Bush* v. *Lathrop* (22 N. Y., 535), that 'the purchaser of a chose in action takes the interest purchased subject to all the defenses, legal and equitable, of the debtor who issued the security.'"

This case was reversed and remanded, and it appeared again, two years later, in the Court of Appeals; was there decided again, and is reported in the 117 N. Y. Reports, at page 320. I read the first paragraph of the syllabus:

"U being the owner of a claim, resting in open account, against Z, entered into a contract with plaintiff, an attorney, by which, among other things, plaintiff agreed to prosecute and, as far as he was able, to collect the claim and to extinguish an indebtedness due him for prior services; for his services rendered and to be rendered, in case suit was brought upon the claim, the contract stated he 'is to have * * * one-third of whatever amount of money, securities or property shall be collected, or in any way realized or received' thereon. U retained the right to determine as to whether suit should be brought, and if brought out of the state to name the attorney; also to decide upon the terms and mode of settlement. *Held:* That the contract was, in effect, an equitable assignment, and by it plaintiff became equitable assignee of so much of the debt as was represented by his share of the proceeds."

The opinion in this case is very interesting reading, and has a military smack to it. The court, on page 331 say:

"The learned counsel for the respondent criticises the language of the agreement, in comparison with that used in the Williams case. In that, he says, the assignee was given a lien upon the fund in express terms. It seems to me that in the present case the language is stronger instead of weaker. Fairbanks was armed with more than a mere lien by its words. He was '*to have* * * * one-third of whatever amount of money, securities or property shall be collected or in any way realized or received.' That is, he was to have, possess, to own as his stipulated proportion of the precise thing received, that proportion to be ascertained and measured by its amount or value."

Our own Supreme Court, while they have not passed upon the question directly, have intimated what they consider the law to

be in one or two cases. In *Diehl* v. *Friester,* 37 O. S., in the opinion at the bottom of page 478, we find this language:

"Perhaps, indeed, there was an agreement between Friester and his attorneys as to the amount of the fee and its lien, and that this was shown to the court."

And again, in *Chapman* v. *Lee,* 45 O. S., 364:

"The plaintiffs had an equitable lien, by virtue of their contract with Miller, upon all moneys paid by the company to the extent of four-tenths, but the action did not primarily seek to trace the fund as such and enforce a lien on that, or hold Chapman and Tracey as trustees, but rather to hold them all liable for money had and received by them to the use of plaintiffs."

These *dicta,* while not very reliable as authorities, do indicate the opinion of the court. In accordance with the New York authorities, we hold the law to be that, under the allegations of the petition, the plaintiffs have an equitable lien upon the fund recovered by Smith; that the portion of the petition asked to be stricken out by the first clause of the motion is material, and that the motion to strike out that portion should be overruled.

In the second ground of the motion, it is asked that if the first point is overruled, that the plaintiffs be required to state in their petition whether the alleged contract was in writing, and, if in writing, to state its contents and substance, or attach a copy to the said amended and supplemental petition.

But this ground of the motion is not well taken. The petitioners have stated the substance of their agreement, and they can not be required to state whether their contract is in writing, for, if it were a contract within the statute of frauds, and required to be in writing to be valid, it would only be necessary to allege in the petition that there was such an agreement, without setting out that it was in writing (*Reinheimer* v. *Carter,* 31 O. S., 586; *Shields* v. *Titus,* 46 O. S., 541). And it would not be in accordance with the provisions of the code to attach a copy to the petition, as it would only be necessary to state the substance of the contract, without attaching a copy.

The second ground of the motion should be overruled.

The third ground is substantially the same as the first, as it

has reference . to the alleged agreement between Smith on the one hand, and Jones, Buckingham and Smythe on the other; and .the motion on that ground may be overruled. :

The fourth ground is the same as the second, and may be overruled.

. · In the fifth ground, the defendants move the court to strike from the amended and supplemental petition the allegation:

"That the said assignments made to said Shawnee Valley Coal & Iron Company, John C. Hamilton, Jay O. Moss, were so made to secure pre-existing debts and were without any valuable consideration paid · or received for them."

This, we think, is redundant matter, and sounds contradictory to say that assignments were made to secure pre-existing debts, :and were without any valuable consideration, for the extinguishment of a pre-existing debt would be a valuable consideration for the assignment of a chose in action. ·

· In the sixth ground, the defendants move the court to strike ·from the petition the allegation that the . assignees, and each of them, had notice of the agreement between the client and his attorneys, and that their services were rendered on behalf, not only of Smith, but of these assignees. This might become material on the trial of the case, and we think the motion should be overruled ·as to that ground.

While the matter pointed out in the fifth ground of the motion ·is redundant, it would be a greater incumbrance to the record ·to require the plaintiffs to file an amended petition than it would to leave in this short paragraph of redundant matter; and, for that reason, the fifth ground may be overruled. · .

The authorities cited by counsel for the defendants we think are not in point. In *Diehl* v. *Friester,* 37 O. S., 473, there was no agreement for fees. *Weakly* v. *Hall,* 13 Ohio, 167, was a champertous contract; and the court held it to be void.

The motion, as a whole, is overruled.